GAUTAM DUTTA (State Bar No. 199326)
BUSINESS, ENERGY, AND ELECTION LAW, PC
1017 El Camino Real # 504
Redwood City, CA  94063
Telephone:  415.236.2048
Email:  Dutta@BEELawFirm.com
Fax:  213.405.2416

Attorneys for Plaintiff
GREGORY MALLEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY MALLEY,<br><br>    *Plaintiff*,<br><br> vs.<br><br>SAN JOSE MIDTOWN DEVELOPMENT LLC, a California limited liability company, SANGEETH PERURI, THOMAS MALGESINI, and DOES 1 through 5;<br><br>    *Defendants*. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>JURY TRIAL DEMANDED<br><br>1. Usury<br>2. Violation of 18 U.S.C. §1962(c) (RICO)<br>3. Violation of 18 U.S.C. §1962(d) (RICO Conspiracy)<br>4. Conversion<br>5. Wrongful Garnishment<br>6. Violation of Cal. Corporations Code §17704.07(r)(2)<br>7. Breach of Contract<br>8. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>9. Fraud<br>10. Negligent Misrepresentation<br>11. Duress<br>12. Material Alteration of Written Instrument (Cal. Civil Code §1700)<br><br>JUDGE: |

**INTRODUCTION**

1. Plaintiff Gregory Malley seeks, *inter alia*, (a) to recover his rightful share of the

1    proceeds from the $11.2 million sale of real estate (the "Property") located at 777

2    West Santa Clara St., San Jose, (b) to recover damages for usury, racketeering,

3    fraud, misrepresentation, and breach of contract, and (c) equitable relief to declare

4    that a number of improperly adopted corporate documents are null and void.

5                                    **THE PARTIES**[1]

6    2.    Defendant **San Jose Midtown Development LLC** ("SJMD") is a California

7          limited liability company headquarters in Santa Clara County.  In 2014, Mr.

8          Malley and two others contributed the Property to SJMD.

9    3.    Defendant **Sangeeth Peruri,** a resident of Santa Clara County, leads an investment

10         consortium that holds a majority stake in SJMD.  He is principal of Sangeeth and

11         Sindhu Peruri Living Trust Dated Nov. 5, 2009, which is a Member of SJMD.

12   4.    Mr. Peruri is a hard-money lender who makes high-interest real estate loans that

13         are typically collateralized by the underlying real-estate asset.

14   5.    Defendant **Thomas Malgesini,** a resident of Santa Clara County, is a Member of

15         SJMD.  Mr. Malgesini, who belongs to Mr. Peruri's majority group, is a hard-

16         money lender.

17   6.    Plaintiff **Gregory Malley,** a resident of Santa Clara County, is a Member of

18         SJMD.  Mr. Malley is not part of Mr. Peruri's majority group.

19                            **JURISDICTION AND VENUE**

20   7.    This Court has jurisdiction over this action pursuant to 18 U.S.C. §1964 (subject-

21         matter jurisdiction) and 28 U.S.C. §1367 (supplemental jurisdiction).  Venue is

22         proper in this judicial district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391,

23         because each Defendant is subject to personal jurisdiction in this judicial district.

24                  **FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS**

25   [1]    Mr. Malley does not know the true names and capacities of Defendants sued in this
26   Complaint as Does 1 through 5, and therefore sues those Defendants by fictitious names.  Mr.
     Malley will amend this Complaint to allege the true names and capacities of Does 1 through 5, as
27   soon as they have been ascertained.  Upon information and belief, each of the Defendants named
     as Does 1 through 5 is responsible in some manner for the occurrence, injury, and other damages
28   alleged in this Complaint.

COMPLAINT

8.    Defendants SJMD and Peruri, along with their agents, are operating an enterprise (the "Enterprise") that engages in the collection of unlawful debt:  usury.

9.    Beginning approximately Jan. 2017, Defendants SJMD and Peruri, through the Enterprise, have collected and attempted to collect usury interest.  The known acts of their wrongdoing are alleged below.

10.   *The First Amendment to the Operating Agreement*.  In Jan. 2017, SJMD adopted the so-called First Amendment (the "First Amendment") to the SJMD Operating Agreement.

11.   SJMD applied economic duress to compel Mr. Malley to sign the First Amendment.  Namely, SJMD's then-Manager threatened to remove Mr. Malley as an SJMD Member if he did not sign the First Amendment.

12.   In relevant part, the First Amendment gave SJMD the purported authority to charge its Members usury interest for taking out loans, and enabled Members to receive interest for advancing funds for SJMD to make those usurious loans.

13.   Subsequently, SJMD improperly adopted the Second, Third, and Fifth Amendments to the Operating Agreement.

14.   The Second Amendment purported to (a) allow SJMD to amend its Operating Agreement without the unanimous, written consent of the Members, and (b) gave SJMD further authority to charge its Members usury interest.  The Third Amendment purported to give SJMD further authority to charge its Members usury interest.

15.   The Fifth Amendment purported to (a) give SJMD further authority to charge its Members usury interest, and (b) enable SJMD to withhold a Member's distribution unless he or she agreed to waive his or her claims against SJMD.

16.   As of July 10, 2018, SJMD and Lending Members had collected usury interest from SJMD Members Gregory Malley, Charles Rosendahl, and Gregory Malley (collectively, the "Borrowing Members").

17.   On or about July 10, 2018, SJMD allowed Lending Members to make a capital

COMPLAINT

1    withdrawal totaling to $254,329.10.  A portion of those funds consisted of usury

2    interest collected from the Borrowing Members.

3    18.   SJMD has charged Mr. Malley "Legal Delinquent Interest" of 20 percent per

4          annum (totaling to **$129,068.28**); (2) SJMD charged me "Legal 20% Bonus

5          Interest" (totaling to **$17,695.58**); (3) SJMD charged me "Environmental LOC

6          (Interest)" of 20 percent per annum (totaling to **$89,990.76**), and (4) SJMD

7          charged me "Delinquent Capital Contribution Interest" of 20 percent per annum

8          (totaling to **$72,712.32**).

9    19.   SJMD will collect the aforementioned funds from Malley as soon as it has

10         received the funds from the sale of the Property – and is expected to immediately

11         disburse those funds to the Lending Members.

12   20.   SJMD refuses to release *any* part of Mr. Malley's distribution from the sale of the

13         Property unless he waives all of his legal claims against SJMD.  By holding his

14         money hostage, SJMD, Mr. Peruri, and his consortium *are trying to stop Mr.*

15         *Malley from having his day in court*.

16   21.   The Enterprise's activity affects interstate commerce, for Defendants have used

17         bank wires to collect unlawful usury interest.

18                          **GENERAL BACKGROUND**

19   22.   In September 2014, Mr. Malley signed and entered into the Amended and Restated

20         Operating Agreement (the "Operating Agreement") of Defendant San Jose

21         Midtown Development LLC ("SJMD").

22   23.   SJMD Members Charles Rosendahl, J.C. Martin, and Gregory Malley contributed,

23         to SJMD, the real property (the "Property") located at 777 West San Carlos Street,

24         San Jose, California.

25   24.   Mr. Malley holds a 16.66 percent economic interest in SJMD.

26   25.   Between 2014 and today, the Property's value has increased by nearly 400 percent.

27   26.   The Sangeeth Peruri-led group of SJMD's majority stakeholders has forced

28         minority stakeholders like Mr. Malley to bear the brunt of all costs associated with

COMPLAINT

developing the Property – while all of the benefits of the four-fold increase in the Property's value have accrued to the majority stakeholders.  The Peruri-led group has done so in two ways:  (1) by retiring debt payable at 10 percent, and (2) requiring the minority Members to take out usury loans ranging from 20 to 40 percent.

27.   In a Dec. 6, 2019 email, Mr. Peruri falsely stated to SJMD's members that he was a licensed real estate broker.  In fact, whenever any SJMD member objected to the usurious rate of interest charged by SJMD, Mr. Peruri would repeatedly state that he was a licensed real estate broker who could charge above the legal rate of interest.  According to the California Department of Real Estate (DRE), Mr. Peruri is a licensed salesperson who is *not* exempt from usury law.

28.   Section 11.7 of the Operating Agreement (Exh. 8) bans it from being amended unless SJMD's Members unanimously agree to do so in writing.

29.   Section 3.5 of the Operating Agreement bans any SJMD Member from "withdraw[ing] any part of the Member's Capital Contribution", unless another part of the Operating Agreement would allow such a capital withdrawal.

30.   Section 5.9 of the Operating Agreement requires, *inter alia*, that all distributions be "*split pro-rata amongst the Members according to their Economic Interest.*"[2]

31.   *Pending Sale of the Property*.  Recently, SJMD entered into an agreement to sell the Property to the Danco Communities ("Danco").  Escrow is expected to close on the Property on Mar. 18, 2020.

32.   The closing of escrow depends on when the buyer has remitted all of the funds for the sale.  As of Mar. 17, 2020, the title company had received approximately $10 million of the $11.2 million required to consummate the transaction.

33.   After escrow closes *and* the trust deed for the sale has been recorded, the funds will be remitted to SJMD's bank account.

---

[2]   Italics added.

COMPLAINT

34.   If escrow closes by Mar. 18, 2020, the funds will likely be **received** by SJMD's bank account by **the morning of Mar. 19, 2020.**

35.   *Usury Loans Imposed on Certain SJMD Members.* In Jan. 2017, SJMD (a) began its practice of charging Members high interest for taking out loans and providing that interest to Members who advanced funds for SJMD to make those loans, and (b) coerced Mr. Malley to shoulder a disproportionate share of the environmental remediation costs for the Property.

36.   To that end, then-SJMD Manager J.C. Martin applied duress to force me to agree to those terms.  In a Jan. 23, 2017 email, Mr. Martin threatened to "remove[]" Mr. Malley as an SJMD Member unless Mr. Malley signed an amendment (the "First Amendment") that would institute those changes.  Faced with such duress, Mr. Malley signed the First Amendment.

37.   In Feb. 2018, when SJMD Manager Ashish Patel was on vacation, Mr. Malley received a call from Jay Patel from SJMD Member Four Gates Capital LLC. During that call, Jay Patel asked Mr. Malley to sign a proposed second amendment (the "Proposed Second Amendment") to the Operating Agreement.

38.   According to Jay Patel, the Proposed Second Amendment would (a) require Members to take out high-interest loans provided by SJMD if they could not make a required contribution to SJMD (e.g., a contribution for legal expenses incurred in connection with the BAPD litigation); and (b) allow other Members to fund those high-interest loans by remitting those loan amounts to SJMD.

39.   Mr. Malley objected to signing the Proposed Second Amendment, because it did not include language regarding the distribution which SJMD Manager Ashish Patel had previously agreed to include.

40.   In response, Jay Patel stated that unless Mr. Malley consented to the Proposed Amendment, SJMD's lawyers would stop their work in the BAPD litigation – which would result in SJMD's losing the litigation.

41.   Jay Patel gave Mr. Malley no time to consult an attorney in connection with the

COMPLAINT

1      Proposed Second Amendment.  Faced with such pressure, Mr. Malley felt

2      compelled to sign the Proposed Second Amendment.

3   42.   *Second Amendment's Removal of Unanimity Requirement*.  After he signed the

4      Proposed Second Amendment, Mr. Malley learned, for the first time, that the

5      Proposed Second Amendment eliminated Operating Agreement's requirement (at

6      ¶11.7) that required the Members' <u>unanimous written consent</u> to amend any part of

7      the Operating Agreement.

8   43.   *Unlawful Adoption of Second Amendment to the Operating Agreement*.

9      Subsequently, SJMD unlawfully adopted the Proposed Second Amendment, for it

10      was not unanimously approved in writing.

11   44.   Specifically, on Feb. 15, 2018, SJMD Manager Ashish Patel sent Mr. Malley an

12      email.  In that email, Mr. Patel stated that he was attaching the "final copy" of the

13      Second Amendment (hereinafter, the "Final Copy"):  "Attached is a *final copy* of

14      [sic] 777 WSC [West San Carlos St.] Second Amendment."[3]

15   45.   However, the Final Copy was *not* signed by Sangeeth Peruri (of Member Sangeeth

16      and Sindhu Peruri Living Trust Dated Nov. 5, 2009), Member Thomas Malgesini,

17      or Victor Chiang (of Member Procurator Holdings, LLC).

18   46.   Immediately after learning that the Final Copy had not been executed by every

19      SJMD Member, Mr. Malley withdrew his improperly obtained consent on July 29,

20      2019.

21   47.   In so doing, Mr. Malley set off a chain of events that revealed a disturbing fact:

22      the Final Copy had been *altered in secret and without the consent* of SJMD's

23      Members.

24   48.   Specifically, on July 29, 2019, SJMD Manager Ashish Patel sent Members an

25      email.  In that email, he attached a document (the "Altered Copy") that purported

26      to contain the signatures of all SJMD Members – including the purported signature

27   _____

28   [3]   Italics added.

1    of Sangeeth Peruri.

2    49.    However, Mr. Peruri's purported signature was dated Apr. 10, 2019 – *over one*

3    *year after* the Final Copy had been distributed.

4    50.    SJMD thus unlawfully adopted the Second Amendment, as well as the subsequent,

5    so-called Third and Fifth Amendments to the Operating Agreement – because all

6    of those purported amendments were adopted *without the unanimous written*

7    *consent* of the Members.

8    51.    By unlawfully adopting those amendments, SJMD was able to impose more

9    onerous terms on the Borrowing SJMD Members (i.e., Mr. Malley, Charles

10    Rosendahl, and J.C. Martin), who were not part of Mr. Peruri's majority funding

11    group.

12    52.    *BAPD's Unsuccessful Bid to Purchase the Property.*  In Nov. 2014, SJMD and

13    Bay Area Property Developers, LLC ("BAPD") entered into an agreement

14    whereby BAPD agreed to purchase the Property.  After litigation ensued in

15    connection with the sale, SJMD and BAPD entered into a settlement agreement in

16    Apr. 2018.

17    53.    Subsequently, SJMD and BAPD entered into another settlement agreement in Sept

18    2019.  Under that agreement, BAPD was given until Nov. 15, 2019 to close

19    escrow on the sale of the Property.

20    54.    BAPD did not close escrow by the close of business on Nov. 15, 2019, and did not

21    purchase the Property.

22    55.    At the time, Mr. Malley had a dispute with SJMD (discussed below) regarding the

23    amount of his distribution from the proceeds from the sale of the Property.

24    56.    Before I learned that BAPD had failed to close escrow, my counsel gave notice to

25    SJMD that I would be seeking a TRO on Nov. 18, 2019 with respect to enjoining

26    SJMD from distributing the sale proceeds to its Members.

27    57.    Because BAPD did not close escrow, there was no longer any need to file – and

28    Mr. Malley did not file – any request for a TRO.  Instead, he repeatedly and

COMPLAINT

1    proactively tried to resolve the dispute regarding Member distributions informally.

2    However, despite his best efforts, the dispute has not been resolved.

3    58.    *Usury Loans Instituted by Unlawfully Adopted Amendments*.  The Final Copy of

4    the Second Amendment subjected the Borrowing Members (i.e., Charles

5    Rosendahl, J.C. Martin, and Mr. Malley) to eye-popping interest rates ranging

6    from **20 to 40 percent.**

7    59.    Mr. Peruri's majority group provided the funding for the aforementioned high-

8    interest loans.

9    60.    Specifically, using the unlawfully adopted Second, Third, and Fifth Amendments,

10   Mr. Peruri caused SJMD to require Mr. Malley and the other Borrowing Members

11   to pay "Delinquent Capital Contribution Interest" of 20 percent, "Environmental

12   LOC [Line of Credit] Interest" of 20 percent, "Legal 20% Bonus Interest", and

13   "Legal Delinquent Interest" of 20 percent.

14   61.    Tellingly, SJMD's Capital Account documents – and SJMD's Manager (Ashish

15   Patel) – have explicitly labeled those four aforementioned items as "interest", and

16   described the financing mechanism with terms that are used for loans: "borrowing

17   members", "line of credit", and "annual rate which compounds daily".  These are

18   terms that are only associated with *loans*.

19   62.    For example, in an email sent on Jan. 24, 2017, Mr. Patel stated that "we have

20   amended our OA [Operating Agreement] to allow for a Line of Credit" – which

21   would "allow *borrowing members* to fund their capital call requirements from

22   contributing members."  As Mr. Patel stated, the "LOC [line of credit] is secured

23   by borrowing members [sic] economic interest", "is at a **20% annual rate** which

24   *compounds daily*, and "*can be paid down anytime* by borrowing member".

25   63.    Moreover, in a Jan. 16, 2020 email, SJMD Manager Ashish Patel confirmed that

26   Mr. Malley was being charged interest ranging from 20 to 40 percent.

27   64.    Specifically, Mr. Patel confirmed that $146,763 was Mr. Malley's "interest

28   charge" for SJMD's legal expenses "since 2018."  To that end, Mr. Patel provided

COMPLAINT

a weblink to a "[work]sheet which gives some overview of the *interest* being charged."[4]  According to that worksheet, the interest rate for SJMD's legal expenses ranged from 20 to 40 percent.

65.    Similarly, on Nov. 11, 2019, SJMD Manager Ashish Patel sent Mr. Malley a Manager's Master Capital Account statement (the "BAPD Capital Account Statement").  At the time, it was expected that BAPD (not Danco) would acquire the Property.[5]

66.    In relevant part of that email, Mr. Patel stated:  "The table [i.e., the BAPD Capital Account Statement] does not have *updated interest due*".[6]

67.    The BAPD Capital Account Statement identifies "Delinquent Capital Contribution Interest" (20 percent), "Environmental LOC [Line of Credit] Principal", "Environmental LOC [Line of Credit] Interest" (20 percent), "Legal 20% Bonus Interest", "Legal Delinquent Interest" (20 percent), and "Mortgage Default Contribution Interest" (10 percent).

68.    Similarly, the Manager's Master Capital Account for the pending sale to Danco (the "Danco Capital Account Statement") identifies "Delinquent Capital Contribution Interest" (20 percent), "Environmental LOC [Line of Credit] Principal", "Environmental LOC [Line of Credit] Interest" (20 percent), "Legal 20% Bonus Interest", "Legal Delinquent Interest" (20 percent), and "Mortgage Default Contribution Interest" (10 percent).[7]

69.    In a Mar. 8, 2018 email, Member (and former SJMD Manager) J.C. Martin noted that it was "ridiculous" that SJMD required Mr. Malley to pay "20% interest initially", "[i]ncreasing to 25% on March 1", [t]o 30% on May 1, then "[t]o 40% on June 1."

---

[4]    Italics added.

[5]    I am mistakenly identified in that document as "Gerhard Malley".

[6]    Italics added.

[7]    I am mistakenly identified in that document as "Gerhard Malley".

COMPLAINT

70.  Although the Final Copy of the Second Amendment called the interest on those aforementioned items a "Preferred Return", the Final Copy made it clear that the "Preferred Return" bears *all of the attributes of a loan*.

71.  Namely, according to the Final Copy (¶7), the rate of the "Preferred Return" was (a) based on the balance of the amount borrowed, (b) based on the "actual number of days" that the funds were borrowed, and (c) would be "cumulative and *compounded daily*."[8]

72.  *Mr. Peruri's Reprisal for Mr. Malley's Objection to His Consortium's Usurious Loans*.  In approximately January 2020, Member (and former SJMD Manager) J.C. Martin offered to effectively reduce Mr. Malley's share of environmental remediation costs for the Property (which totaled to $219,775.48) by $112,000 – by applying the $336,000 commission that he will receive from the Property's sale to Danco toward the total remediation costs (which totaled to $659,326.45).

73.  However, after Mr. Malley objected to the onerous interest rates imposed by SJMD, Mr. Peruri caused SJMD to reject Mr. Martin's offer.  Specifically, Mr. Peruri stated that if Mr. Malley objected to paying him interest of 40 percent, he would cause SJMD to *eliminate* Mr. Martin's commission – and thereby frustrate Mr. Martin's ability to alleviate the environmental remediation costs that were being shouldered by SJMD's other two minority members (Charles Rosendahl and Mr. Malley).

74.  *The Distribution to Which Mr. Malley Is Entitled*.  Contrary to SJMD's Danco Capital Account Statement, Mr. Malley is entitled to a distribution of **$1,823,740.95,** not $515,849.43.

75.  *SJMD's Accounting Irregularities*.  To begin with, the MCA Spreadsheet *omits the deposits – totaling to $1,080,000* (the "BAPD Deposit") – that were made by the unsuccessful buyer of the Property (Bay Area Property Developers, LLC,

---

[8]  Italics added.

COMPLAINT

"BAPD").  However, the Danco Capital Account Statement did not credit any part

of the BAPD Deposit to Mr. Malley.

76.  Also troubling, the Danco Capital Account Statement provides no itemized

substantiation for the "Holdback"[9] (the "Holdback") of $387,000 made to the

Proceeds.  According to the Danco Capital Account Statement, that amount

stemmed from "Commission, Thoits Legal, Tax Prep and Misc."  Because none of

those purported expenses were itemized, there is no justification for that amount.

77.  Moreover, "Table 1" of the Danco Capital Account Statement states that, "around

July 10, 2018", five SJMD members made "Capital Withdrawal[s]" totaling to

**$254,329.10.**  However, SJMD's Operating Agreement (¶3.5) bans any SJMD

member from "withdraw[ing] any part of the Member's Capital Contribution",

unless another section of the Operating Agreement would allow such a capital

withdrawal.

78.  Here, no part of the Operating Agreement allowed any member to make a "Capital

Withdrawal", let alone any other "Capital Withdrawal" made by any other SJMD

member.  Although the Danco Capital Account Statement opaquely states that

"[p]art of those payments were intramember interest [sic]", any such payments

were made by depleting SJMD's *capital*.

79.  Earlier, BAPD deposited a total of $1,086,000 in connection with its unsuccessful

bid to purchase the Property.  If that amount had been credited to the SJMD

members' capital accounts, there would have been no need for Mr. Malley to take

out a loan with respect to the Property's environmental remediation costs – for

which SJMD (in the Danco Capital Account Statement) unlawfully required me to

pay $218,840.57 in "Principal" and $89,990.76 in "Interest".

80.  According to the Danco Capital Account Statement, $336,000 of BAPD's deposit

– which should have been credited to the SJMD members' capital accounts – was

---

[9]  *See* third item under the heading "Return of Invested Capital".

COMPLAINT

*paid out as interest*.  As we have shown, SJMD began charging usurious interest rates after it (improperly) adopted the First Amendment to the Operating Agreement.  Therefore, all such "Capital Withdrawals" were *unlawful*.

81.  *The Distribution Due to Mr. Malley*.  Based on the following calculations, Mr. Malley is entitled to a distribution of **$1,823,740.95** from the Proceeds.

82.  *First*, we begin with two undisputed facts.  Namely, the Proceeds total to **$12,280,000** (i.e., the $11,200.00 sale price of the Property, plus the $1,080,000 BAPD Deposit); and Mr. Malley's economic interest in SJMD is **16.66 percent.**

83.  *Second*, SJMD's total shared expenses total to **$1,333,175.55** per the Danco Capital Account Statement.  Specifically, the amount specifically itemized for legal expenses (labeled by the MCA Spreadsheet as "Legal Capital Call 1") totals to **$515,675.55.**  In addition, property tax on the Property totals to approximately **$187,500** (i.e., $37,500 / yr, @ 5 yrs); and permissible interest on the $1,800,000 note on the Property totals to approximately **$630,000** (i.e., interest of 10 percent / yr @ 3.5 yrs).

84.  *Therefore*, Mr. Malley is entitled to a distribution of **$1,823,740.95** (i.e., 16.66% of the <u>difference</u> between the $12,280,000 in Proceeds and $1,333,175.55 in shared expenses).

85.  *Illegal Usury Interest*.  Furthermore, because illegal usury interest has been imposed upon me, SJMD – and any members who have reaped such interest – are liable for treble damages totaling to **$928,400.82.**

86.  Here, it is undisputed that in its Danco Capital Account Statement, (1) SJMD charged Mr. Malley "Legal Delinquent Interest" of 20 percent per annum (totaling to **$129,068.28**); (2) SJMD charged Mr. Malley "Legal 20% Bonus Interest" (totaling to **$17,695.58**); (3) SJMD charged Mr. Malley "Environmental LOC (Interest)" of 20 percent per annum (totaling to **$89,990.76**), and (4) SJMD charged Mr. Malley "Delinquent Capital Contribution Interest" of 20 percent per annum (totaling to **$72,712.32**).

87.    It is also undisputed that according to the Danco Capital Account Statement, Thomas Malgesini will receive usurious interest payments totaling to **$153,868.65.**

88.    Specifically, Mr. Malgesini will receive the following usurious interest payments that SJMD collected from Charles Rosendahl, J.C. Martin, and myself:  (1) **$34,883.17** in "Legal Delinquent Interest" of 20 percent per annum; (2) **$3,880.26** in "Legal 20% Bonus Interest"; (3) **$72,769.11** in "Environmental LOC (Interest)" of 20 percent per annum, and **$42,336.11** in "Delinquent Capital Contribution Interest" of 20 percent per annum.

89.    Accordingly, SJMD and others are liable for treble damages totaling to **$928,400.82** (i.e., **$309,466.94** multiplied by 3).

90.    *Mr. Malgesini's Unlawful Attempt to Garnish My Distribution*.  In an email sent on Mar. 17, 2020, SJMD Manager Ashish Patel stated that SJMD would detain nearly $300,000 from Mr. Malley's distribution in response to Mr. Malgesini's request to garnish the Proceeds from my distribution.

91.    Earlier, during a Jan. 9, 2020 in-person meeting at Panera Bread in Mountain View, Mr. Patel promised Mr. Malley that SJMD (a) would *deny* Mr. Malgesini's garnishment request, and (b) would *not* detain any of Mr. Malley's distribution in connection with Mr. Malgesini's garnishment request.

92.    What is more, SJMD is legally barred from detaining any part of Mr. Malley's distribution – not least because Mr. Malley's July 15, 2015 Joint Venture Agreement with Mr. Malgesini (the "Joint Venture Agreement") *neither contemplates nor requires any payment to Mr. Malgesini under the current escrow*.

93.    Under the Joint Venture Agreement, Mr. Malgesini remitted $200,000 on Mr. Malley's behalf on July 15, 2015 in connection with a real-estate transaction.

94.    The Joint Venture Agreement explicitly contemplated that unless Mr. Malgesini received payment from BAPD or Mr. Malley before the close of escrow *under the prior escrow with the previous prospective buyer* (BAPD), then Mr. Malgesini

COMPLAINT

would have recourse to *only one source of payment*:  the escrow account for the sale of the Property *to BAPD*.

95. Specifically, the Joint Venture Agreement entitled Mr. Malgesini the right to $250,000, from my distribution, "upon the Close of Escrow" of "Escrow No.: 0616011695-SL" – the escrow account established for the BAPD sale.

96. Because escrow did not close on the BAPD sale, the Joint Venture Agreement is null and void.  Alternatively, the Joint Venture Agreement is unenforceable because it contemplates usury interest.

97. Accordingly, SJMD has no legal authority to detain or garnish any part of Mr. Malley's distribution from the Proceeds.

98. ***SJMD's Unlawful Impoundment of the <u>Entirety</u> of My Distribution***.  In his email from Mar. 17, 2020, Mr. Patel stated that **none** of Mr. Malley's distribution would be released *unless*, inter alia, *Mr. Malley agreed not to sue SJMD*:  "I am asking all members to sign a waiver against the LLC *prior to a release* of each member's *proceeds*."[10]

99. According to third paragraph of the release form (at p.1) that Mr. Patel asked Mr. Malley to sign, Section 5.9 of the Operating Agreement allows SJMD to require Members to sign a release before any funds are released to them.  The relevant portion of Section 5.9 was contained in the so-called Fifth Amendment to the Operating Agreement – which was unlawfully adopted without the written consent of all Members.

100. Mr. Malley did not provide his consent to, and did not sign, the Fifth Amendment.

101. *Troubling Discrepancy in SJMD's Altered Capital Account Statement.*  On Mar. 17, 2020, in addition to impounding nearly **$300,000** of my distribution at the behest of Thomas Malgesini, SJMD reduced Mr. Malley's distribution by nearly **$30,000** *without providing any explanation*.

---

[10] Italics added.

102.   In the *altered* Danco Capital Account Statement, SJMD claimed that Mr. Malley was due a distribution of $515,849.43 (an amount that Mr. Malley disputes).

103.   However, in the Altered Danco Statement, SJMD claims that Mr. Malley is due a distribution of **$61,160.95 –** after making an *unauthorized* deduction of **$298,465.76** for Thomas Malgesini and an authorized deduction of **$127,000.**

104.   Adding the aforementioned three amounts should yield **$515,849.43** (the amount in the Danco Capital Account Statement), but it does not.  Instead, adding those three amounts yields **$486,626.71.**

105.   Comparing both statements, there is a discrepancy *in SJMD's favor* of **$29,222.72** for which SJMD *provided no explanation*.  ($29,222.72 is the difference between $515,849.43 and $486,626.71.)  Thus, Mr. Malley has been deprived of **nearly $30,000** without any explanation.

106.   Mr. Malley does not have unlimited funds to pay for litigation – a fact which Mr. Peruri and other well heeled members of his majority group of stakeholders know.  By refusing to release *any* part of my distribution – i.e., holding Mr. Malley's money hostage – SJMD, Mr. Peruri, and his consortium *are trying to stop Mr. Malley  from having his day in court*.

107.   *SJMD's Refusal to Withhold 15 Percent of the Sale Proceeds.*  SJMD has also refused to withhold 15 percent from the Proceeds (i.e., **$1.68 million**) from SJMD members on a *pro rata* basis, that are expected to be received by SJMD on or after Mar. 18, 2020 from the sale the Property, until Mr. Malley's dispute with SJMD is resolved.

## COUNT 1

### Usury (Cal. Civ. Code §1916-3)

*Against Defendants SJMD and Thomas Malgesini*

108.   The foregoing allegations are hereby incorporated by reference.

109.   SJMD is liable for usury, for it unlawfully collected, and attempted to collect usury interest from Mr. Malley.  Accordingly, SJMD is liable for treble damages.

110.   If the Joint Venture Agreement is not found to be null and void, then Mr. Malley alternatively seeks treble damages from Mr. Malgesini.

## COUNT 2

### Violation of 18 U.S.C. §1962(c) (RICO)

*Against Defendants SJMD and Peruri*

111.   The foregoing allegations are hereby incorporated by reference.

112.   Defendants SJMD and Sangeeth Peruri are associated with the Enterprise.

113.   Defendants SJMD and Peruri agreed to and did conduct and participate in the conduct of the Enterprise's affairs for the unlawful purpose of collecting unlawful debt.

114.   Pursuant to and in furtherance of their unlawful scheme, Defendants SJMD and Peruri committed acts of unlawfully collecting and attempting to collect unlawful usury interest.

115.   Defendants SJMD and Peruri have directly and indirectly conducted and participated in the conduct of the Enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. §1962(c).

116.   As a direct and proximate result of the aforementioned racketeering activities and violations of 18 U.S.C. §1962(c), Mr. Malley has suffered severe, debilitating financial harm.

## COUNT 3

### Violation of 18 U.S.C. §1962(c) (RICO Conspiracy)

*Against Defendants SJMD and Sangeeth Peruri*

117.   The foregoing allegations are hereby incorporated by reference.

118.   As set forth above, Defendants SJMD and Peruri (collectively, the "RICO Conspiracy Defendants") agreed and conspired to violate 18 U.S.C. §1962(c), by engaging in conduct designed to unlawfully collect and attempt to collect usury interest.

119.   The RICO Conspiracy Defendants have intentionally conspired and agreed to

COMPLAINT

1   directly and indirectly use or invest income or gain that is derived from a pattern of

2   racketeering activity in an interstate enterprise, acquire or maintain interests in the

3   enterprise through a pattern of racketeering activity, and conduct and participate in

4   the conduct of the affairs of the enterprise through a pattern of racketeering

5   activity.  The RICO Conspiracy Defendants knew that their predicate acts were

6   part of a pattern of racketeering activity, and agreed to the commission of those

7   acts to further the schemes described above.  That conduct constitutes a conspiracy

8   to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

9   120.   As a direct and proximate result of the RICO Conspiracy Defendants' conspiracy,

10   the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C.

11   §1962(d), Mr. Malley has suffered severe, debilitating economic harm.

12   **COUNT 4**

13   <u>Conversion</u>

14   *Against Defendant SJMD*

15   121.   Paragraphs 1 through 107 are hereby incorporated by reference.

16   122.   SJMD (a) had no right to retain, from Mr. Malley, any part of his distribution from

17   the proceeds from the sale of the Property, and (b) did not have Mr. Malley's

18   consent to retain that money.

19   123.   Nevertheless, no Defendant has released to Mr. Malley any of the money that has

20   been unlawfully withheld from Mr. Mallley.

21   124.   As a direct and proximate result, Mr. Malley has suffered severe, debilitating

22   economic harm.

23   **COUNT 5**

24   <u>Wrongful Garnishment</u>

25   *Against Defendant SJMD*

26   125.   Paragraphs 1 through 107 are hereby incorporated by reference.

27   126.   Defendant SJMD had no right to garnish, on behalf of Defendant Thomas

28   Malgesini, any part of Mr. Malley's distribution from the proceeds from the sale of

COMPLAINT

the Property.

127. According, SJMD is liable for wrongful garnishment.

**COUNT 6**

Violation of Cal. Corporations Code §17704.04(r)(2)

*Against Defendant SJMD*

128. Paragraphs 1 through 107 are hereby incorporated by reference.

129. Cal. Corporations Code §17704.07(r)(2) bans a limited liability company from amending its operating agreement, unless its members unanimously agree to do so, or (b) a written operating agreement provides otherwise.

130. Under its express terms (¶11.7), the Operating Agreement may only be amended if the Members unanimously agree to do so in writing.

131. Defendant SJMD amended its Operating Agreement without obtaining the unanimous approval of its Members.  Specifically, the purported Second Amendment – which SJMD labeled as the "final copy" (the "Final Copy") and distributed to its Members on Feb. 15, 2018 – was *not* signed by Defendant Peruri, Defendant Malgesini, or SJMD Member Victor Chiang.

132. In addition, the Third and Fifth Amendments were unlawfully adopted, because they were not approved with the unanimous, written consent of SJMD's Members.

133. In so doing, SJMD violated Cal. Corporations Code §17704.07(r)(2).

**COUNT 7**

Breach of Contract

*Against Defendant SJMD*

134. Paragraphs 1 through 107 are hereby incorporated by reference.

135. Mr. Malley entered into the Operating Agreement.

136. Mr. Malley performed all or substantially all of the duties required under the Operating Agreement.

137. All conditions required for SJMD's performance had occurred.

138. SJMD breached the Operating Agreement when it (a) amended the Operating

COMPLAINT

1    Agreement without gaining the unanimous written consent of SJMD's Members,

2    when it unlawfully adopted the Second, Third, and Fifth Amendments to the

3    Operating Agreement; (b) refused to release any part of Mr. Malley's distribution

4    because he refused to waive his legal claims against SJMD; (c) collected usury

5    interest in violation of the provisions of the Operating Agreement, and (d)

6    breached the Operating Agreement's requirement's pre-sale ban against making

7    distributions to members.

8    139.   As a direct result of SJMD's wrongdoing, Mr. Malley has suffered severe,

9    debilitating economic harm.

10                              **COUNT 8**

11           Breach of the Covenant of Good Faith and Fair Dealing

12                       *Against Defendant SJMD*

13    140.   Paragraphs 1 through 107 are hereby incorporated by reference.

14    141.   Mr. Malley entered into the SJMD Operating Agreement, and performed all or

15    substantially all of the duties required under the contracts.

16    142.   All conditions required for Mr. Malley's performance had occurred.

17    143.   Nevertheless, SJMD unfairly interfered with Mr. Malley's right to receive the

18    benefits of the Operating Agreement.

19    144.   As a direct and proximate result, Mr. Malley suffered significant economic harm.

20                              **COUNT 9**

21                                Fraud

22                       *Against Defendant SJMD*

23    145.   Paragraphs 1 through 107 are hereby incorporated by reference.

24    146.   SJMD deliberately (a) concealed from its Members, including Mr. Malley, that the

25    Second Amendment to the Operating Agreement had been approved *without* their

26    unanimous written consent, and (b) falsely represented to its Members, including

27    Mr. Malley, that it could amend the Operating Agreement without the unanimous

28    written consent of the Members.

COMPLAINT

147.    SJMD deliberately (a) concealed from its Members, including Mr. Malley, that it lacked the authority to impose usury interest on the Borrowing Members, and (b) falsely represented that it had the authority to impose usury interest on the Borrowing Members.

148.    SJMD deliberately concealed from its Members, including Mr. Malley, that it was making forbidden distributions to Borrowing Members.

149.    As a direct and proximate result, Mr. Malley has suffered severe, debilitating financial harm.

## COUNT 10

Negligent Misrepresentation

*Against Defendant SJMD*

150.    Paragraphs 1 through 107 are hereby incorporated by reference.

151.    SJMD negligently (a) concealed from its Members, including Mr. Malley, that the Second Amendment to the Operating Agreement had been approved *without* their unanimous written consent, and (b) falsely represented to its Members, including Mr. Malley, that it could amend the Operating Agreement without the unanimous written consent of the Members.

152.    SJMD negligently (a) concealed from its Members, including Mr. Malley, that it lacked the authority to impose usury interest on the Borrowing Members, (b) falsely represented that it had the authority to impose usury interest on the Borrowing Members, and (c) promised not to garnish any of Mr. Malley's distribution from the proceeds from the Sale of the Property.

153.    SJMD negligently concealed from its Members, including Mr. Malley, that it was making prohibited distributions to the Lending Members.

154.    As a direct and proximate result, Mr. Malley has suffered severe, debilitating financial harm.

## COUNT 11

Duress

COMPLAINT

1      *Against Defendant SJMD*

2      155.    Paragraphs 1 through 107 are hereby incorporated by reference.

3      156.    Then-SJMD Manager J.C. Martin threatened to remove Mr. Malley from SJMD

4              unless he agreed to sign the First Amendment to the Operating Agreement.

5      157.    Confronted with such economic duress, Mr. Malley signed the First Amendment.

6      158.    As a direct and proximate result, Mr. Malley suffered severe economic harm.

7      159.    In so doing, SJMD became liable for duress.

8                                  **COUNT 12**

9              Material Alteration of Written Instrument (Cal. Civil Code §1700)

10                          *Against Defendant SJMD*

11     160.    Paragraphs 1 through 107 are hereby incorporated by reference.

12     161.    SJMD materially altered the Proposed Second Amendment to the Operating

13             Agreement after the Final Copy of that document had been delivered to SJMD's

14             Members, and neither sought nor obtained the prior consent of the Members to

15             make such an alteration.

16     162.    Consequently, the Second Amendment was unlawfully adopted by SJMD.

17     163.    As a direct and proximate result, Mr. Malley suffered significant economic harm,

18             and is entitled to (a) a judicial declaration that the Second Amendment is null and

19             void, and (b) rescission of the Second Amendment.

20                              **PRAYER FOR RELIEF**

21     Mr. Malley asks the Court to grant the following relief:

22     I.      General, including treble, damages according to proof;

23     II.     Equitable relief, including but not limited to (a) Declarations that the First, Second,

24             Third, and Fifth Amendments to the SJMD Operating Agreement are null and

25             void, (b) rescission of the Second and Fifth Amendments to the Operating

26             Agreement, and (c) a Declaration that the Joint Venture Agreement between Mr.

27             Malley and Defendant Malgesini is null and void;

28

III.    Special damages according to proof;

IV.    All reasonable attorney's fees and costs, including prejudgment interest;

V.    All other relief that the Court deems just and equitable.

DATED:  Mar. 18, 2020

BUSINESS, ENERGY, AND ELECTION

LAW, PC


By:  /s/ Gautam Dutta

GAUTAM DUTTA, ESQ.

Attorneys for Plaintiff

GREGORY MALLEY

COMPLAINT