UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY MALLEY,<br><br>Plaintiff,<br><br>v.<br><br>SAN JOSE MIDTOWN DEVELOPMENT LLC, et al.,<br><br>Defendants. | Case No. 5:20-cv-01925-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 60, 63 |

This is Plaintiff Gregory Malley's third attempt to plead facts to support his federal Racketeer Influence and Corrupt Organizations Act ("RICO") and state law claims related to a real estate development project in San Jose, California. Plaintiff's Second Amended Complaint again names multiple defendants: San Jose Midtown Development LLC ("SJMD"); Sangeeth Peruri, individually and in his capacity as Trustee of Sangeeth and Sindhu Peruri Living Trust Dated Nov. 5, 2009 ("Peruri"); Ashish Patel ("Patel"); Peruri Capital Partners, LLC ("Peruri Capital"); Four Gates Capital, LLC ("Four Gates"); Procurator Holdings, LLC ("Procurator"); and Thomas Malgesini ("Malgesini") (collectively, "Defendants"). *See* Second Amended Complaint for Damages and Equitable Relief ("SAC"), Dkt. No. 56.

Presently before the Court are Defendants' motion to dismiss Plaintiff's usury and federal RICO claims (Dkt No. 60) and SJMD, Ashish Patel, and Thomas Malgesini's separate motion to dismiss state law claims asserted against them (Dkt. No. 63). Defendants contend that this Court must dismiss the claims in Plaintiff's SAC for failure to state a claim upon which relief can be granted and for lack of subject-matter jurisdiction. Having considered the parties' papers, the

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
1

Court **GRANTS** Defendants' motions to dismiss.[1]

## I.   BACKGROUND

### A.   Factual Background

The Court's first dismissal order sets forth the factual background of Plaintiff's suit. *See* Order Granting Defendants' Motions to Dismiss and Motion to Stay Discovery ("Dismissal Order"), Dkt. No. 52. The Court now reviews allegations relevant to the instant motions to dismiss.

Defendant SJMD is a California limited liability company formed in February 2014 by Charles Rosendahl and Jerry Calvin ("J.C.") Martin to develop two properties in San Jose California, 740 W. San Carlos Street and 777 W. San Carlos Street. Defendants Request for Judicial Notice ("RJN"), Dkt. No. 62 Ex. 5 ("SJMD Original Operating Agreement"). Charles Rosendahl was the owner of 740 W. San Carlos Street and had 777 W. San Carlos Street in escrow at the time of SJMD's formation. *Id.* In September 2014, SJMD executed an Amended and Restated Operating Agreement ("Restated Operating Agreement") to account for the addition of Plaintiff and the remaining Defendants as members of SJMD. *See* SAC ¶ 27, Ex. 9. Under the Restated Operating Agreement, Plaintiff, Charles Rosendahl, and J.C. Martin committed 777 W. San Carlos Street (the "Property") to SJMD, while all new members were awarded both Percentage and Economic Interests in exchange for capital contributions. SAC ¶¶ 27-29, Ex. 9 at 18.

Defendants received a 51% Percentage Interest in SJMD. SAC, Ex. 9 at 18. Plaintiff held a 16.33% Percentage Interest in SJMD and a 16.67% Economic Interest. *Id.* The Percentage Interest dictated all voting related to the operations of SJMD and therefore Defendants became the "Majority Members" of SJMD. SAC, Ex. 9 at 3 (§§ 1.18, 1.32). However, Charles Rosendahl and J.C. Martin continued to function as SJMD's co-Managers. *Id.* at 8 (§§ 5.1, 5.2). The Restated Operating Agreement also allowed SJMD's Managers to determine when additional

---

[1] Pursuant to N.D. Cal. Civ. L.R. 7-1(b), this Court found these motions suitable for consideration without oral argument. *See* Dkt. No. 52.

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
2

1   capital contributions were needed "to conduct [SJMD's] business." *Id*. at 5 (§ 3.3). If a member
2   did not make an additional contribution following a capital call, that member's Percentage and
3   Economic Interests would be adjusted accordingly to account for advances made by other
4   members. *Id*. at 6-7 (§ 3.4).
5   　　　　In November 2014, SJMD executed a Purchase and Sale Agreement to sell the Property to
6   another development company, Bay Area Property Developers, LLC ("BAPD"). SAC ¶ 32. For
7   the next two years SJMD obtained necessary approvals and permits to remediate environmental
8   conditions and construct multiple residential units on the Property. *Id*. ¶ 34. Plaintiff alleges that
9   securing the approvals and permits made it unquestionable that SJMD would be "able to sell the
10  [P]roperty at a premium." *Id*. However, in May 2016 a legal dispute arose between SJMD and
11  BAPD suspending the close of escrow and creating significant legal work and expenses for SJMD
12  over the next three years. *Id*. ¶ 35. A settlement agreement was first reached by SJMD and BAPD
13  in April 2018 and then again in September 2019 which gave BAPD until November 2019 to close
14  escrow on the sale of the Property. *Id*. ¶ 38. Yet, escrow did not close by November 2019 and
15  SJMD did not sell the Property to BAPD. *Id*. ¶ 39.
16  　　　　During this time, Plaintiff alleges that a defendant Peruri-led group of SJMD's Majority
17  Members forced minority members, like Plaintiff, to bear the brunt of all costs associated with
18  developing the Property and the BAPD litigation by making calls for additional capital
19  contributions. *Id*. ¶ 45. Moreover, beginning in January 2017, SJMD adopted the first of five
20  amendments to the Restated Operating Agreement which Plaintiff claims gave SJMD the authority
21  to charge its members usury interest for taking out loans to help cover their additional capital
22  contributions. *Id*. ¶ 16. Related to these loans, Plaintiff alleges that other SJMD members could
23  now receive interest payments in exchange for making the additional contributions on behalf of a
24  defaulting member. *Id*. The Second Amendment also allowed SJMD to amend the Restated
25  Operating Agreement without the unanimous, written consent of its members while the Fifth
26  Amendment gave SJMD the power to withhold a member's distribution unless the member agreed
27  to waive all claims against SJMD, its Managers, and other SJMD members. *Id*. ¶¶ 18-19.
28  Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
3

Plaintiff claims that after the introduction of these amendments, he along with other "Borrowing Members" were required to pay different forms of interest such as a "Delinquent Capital Contribution Interest" and a "Legal 20% Bonus Interest" associated with capital contributions. *Id.* ¶ 20. Plaintiff further alleges that when any member objected to the rate of interest charged by Defendants, defendant Peruri would falsely state that he was a licensed real estate broker who could charge above the legal rate of interest. *Id.* ¶¶ 139-40.

SJMD ultimately sold the Property for $11.2 million dollars with escrow closing in March 2020. *Id.* ¶ 47. As escrow was closing, Plaintiff was informed by defendant Patel that he would not receive any distributions related to the sale of the Property until Plaintiff waived his right to bring any actions against Defendants pursuant to the Fifth Amendment. *Id.* ¶ 122. After Plaintiff refused to execute the waiver document, Defendants withheld the release of proceeds from the sale to Plaintiff. *Id.* ¶¶ 122-24. Thereafter, Plaintiff brought this action against Defendants.

### B. Procedural History

Plaintiff filed the instant action on March 18, 2020. Dkt. No. 1. Plaintiff also filed a motion for temporary restraining order the following day, which the Court denied. *See* Order Denying Plaintiff's Motion for Temporary Restraining Order, Dkt. No. 11. Following the denial of his motion for temporary restraining order, Plaintiff filed an amended complaint ("FAC") which asserted two claims under the RICO Act (18 U.S.C. § 1962(c), (d)). *See* Dkt. No. 13. The FAC also included the following thirteen state law claims: (1) violation of California Civil Code § 1822; (2) Attempted Extortion; (3) Usury; (4) Conversion; (5) Wrongful Garnishment; (6) Violation of California Corporations Code § 17704.07; (7) Violation of California Corporations Code § 17704.09; (8) Breach of Contract; (9) Breach of Covenant of Good Faith and Fair Dealing; (10) Fraud; (11) Negligent Misrepresentation; (12) Duress; and (13) Material Alteration of Written Instrument.

The Defendants then filed a motion to dismiss the usury and RICO claims. *See* Dkt. No. 29. SJMD, Ashish Patel, and Thomas Malgesini also filed a separate motion to dismiss the remaining state law claims brought against them. Dkt. No. 31. After reviewing the parties papers,

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
4

1   the Court granted Defendants' motion to dismiss Plaintiff's usury and RICO claims.  Dismissal
2   Order at 12.  The Court also declined to exercise supplemental jurisdiction over the remaining
3   state law claims and dismissed the claims without prejudice.  *Id*.  However, Plaintiff's usury and
4   RICO claims were dismissed with leave to amend and the Court informed Plaintiff that he could
5   not add new claims or parties without leave of the Court or stipulation by the parties pursuant to
6   Federal Rule of Civil Procedure 15.  *Id*.

7   Soon thereafter Plaintiff filed his SAC.  The SAC asserts the same RICO and state law
8   claims as in his FAC, and also an additional wire fraud claim under 18 U.S.C. § 1961(1) which
9   Plaintiff included without first seeking leave of the Court or stipulation by the parties.  *See* SAC ¶¶
10  125-200.  In response, Defendants filed their motion to dismiss Plaintiff's SAC pursuant to
11  Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1).  *See* Dkt. No. 60 ("Mot.").  SJMD, Ashish
12  Patel, and Thomas Malgesini again filed a separate motion to dismiss the state law claims asserted
13  against them.  Dkt. No. 63.  ("Mot. State Claims").  Plaintiff filed two separate oppositions to the
14  motions to dismiss.  *See* Plaintiff Gregory Malley's Opposition to Motion to Dismiss RICO and
15  Usury Claims ("Opp."), Dkt. No. 63; Plaintiff Gregory Malley's Opposition to Motion to Dismiss
16  Non-Usury, State-Law Claims ("Opp. to State Law Claims"), Dkt. No. 64.  Defendants then filed
17  a reply in support of their motion to dismiss ("Reply"), Dkt. No. 69, while SJMD, Patel, and
18  Malgesini also filed a reply in support of their motion to dismiss ("Reply to State Law Claims"),
19  Dkt. No. 70.

20  **II.   LEGAL STANDARD**

21  "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable
22  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v.*
23  *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  Rule 8 of the Federal Rules of Civil Procedure
24  requires a complaint to contain "a short and plain statement of the claim showing that the pleader
25  is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must
26  contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
27  face.'"  *Ashcroft v. Iqbal*, 563 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.
28  Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
5

544, 570 (2007)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In assessing the sufficiency of the pleadings, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 563 U.S. at 678.  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id*. at 679.  Those facts must be sufficient to push the claims "across the line from conceivable to plausible." *Id*. at 683.  Ultimately, the allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

Where a complaint or claim is dismissed, "[l]eave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).  Leave to amend is not required where permitting further amendment to the pleadings would be futile. *See Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1049–1050 (9th Cir. 2006).

### III.    DISCUSSION

#### A.    Judicial Notice

Defendants ask the Court to take judicial notice of eighteen exhibits, which are attached to Defendants' Request for Judicial Notice and referenced in the Declaration of Mark V.

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
6

1   Boennighausen in Support of Defendants' Motion to Dismiss ("RJN"), Dkt. No. 62.  RJN Exhibits
2   1-17 are the same documents the Court previously reviewed, *see* (Dkt. No. 33), and referenced in
3   the Court's Order.  *See* Dismissal Order at 4-7.  RJN Exhibit 18 is a December 6, 2019 email sent
4   by defendant Peruri to Plaintiff which was referenced in the SAC.  *See* SAC ¶¶ 46, 138-40.
5   Plaintiff again opposes several of the exhibits referenced in the RJN including RJN Exhibits 1-4,
6   14, and 18.  *See* Plaintiff Gregory Malley's Objections to Defendants' Improperly Consolidated
7   Request for Judicial Notice ("Obj. re RJN"), Dkt. No. 67.

8        As a general rule, the Court may not consider any material outside the pleadings in ruling
9   on a Rule 12(b)(6) motion.  *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir.
10  2011).  There are two exceptions to this rule, when the complaint necessarily relies on the
11  documents or where the court takes judicial notice of documents.  *Lee v. City of Los Angeles,* 250
12  F.3d 668, 689 (9th Cir. 2001).  The incorporation by reference doctrine allows material that is
13  attached to the complaint to be considered, as well as "unattached evidence on which the
14  complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is
15  central to plaintiff's claim; and (3) no party questions the authenticity of the document."
16  *Corinthian Colleges*, 655 F.3d at 999.  Under the Federal Rules a court may take judicial notice of
17  a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the
18  territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort
19  to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

20       The Court finds it appropriate to consider the following RJN Exhibits: (5) the initial
21  February 6, 2014 SJMD Operating Agreement; (6) the September 8, 2014 Restated Operating
22  Agreement; (13) the First Amendment to the Restated Operating Agreement; (14) the Second
23  Amendment to the Restated Operating Agreement; (15) the Third Amendment to the Restated
24  Operating Agreement; (16) the Fourth Amendment to the Restated Operating Agreement; and (17)
25  the Fifth Amendment to the Restated Operating Agreement.  The incorporation by reference
26  doctrine allows the Court to consider documents that are extensively referred to in the complaint
27  or that form the basis of the plaintiff's claims.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d
28  Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
7

988, 1002 (9th Cir. 2018) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).  Here, Plaintiff references SJMD's Operating Agreement and amendments to the Restated Operating Agreement at several points throughout his SAC.  Although Plaintiff objects to the incorporation of RJN Exhibit 5, the Restated Operating Agreement is one agreement that the Court chooses to consider in its entirety including the initial version of the Operating Agreement and its related amendments as Plaintiff's claims depend on the contents of SJMD's Restated Operating Agreement.  *See* Khoja, 899 F.3d 988, 1002 (9th Cir. 2018) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Moreover, Plaintiff's objection to RJN Exhibit 14 for failure to lay proper foundation is again denied.  Exhibit 14 has been properly authenticated as Plaintiff has previously referenced and attached a copy of Exhibit 14 as an exhibit to his earlier motion for temporary restraining order.  *See* Dkt. 2-1.  While Plaintiff challenges the finality of RJN Exhibit 14, the authenticity of the exhibit is not subject to reasonable dispute.  However, the Court will not consider any disputed facts contained in RJN Exhibit 14.

Further, the Court will consider RJN Exhibit 18 which is an email sent by defendant Peruri to Plaintiff.  The email is referenced by Plaintiff in the SAC, specifically as support for Plaintiff's wire fraud claim.  *See* SAC ¶¶ 139-40.  Because Plaintiff's wire fraud claim depends in part on the contents of the email, the Court will take into account Defendant's RJN Exhibit 18.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding district court properly considered documents attached to a motion to dismiss that described the terms of a group health insurance plan, where plaintiff's claims depended on the conditions described in the documents and plaintiff never disputed their authenticity).

Defendants also request that the Court take notice of RJN Exhibits, (7) the July 15, 2015 Loan Agreement agreed to by Plaintiff in which he was to disburse funds to defendant Malgesini from the proceeds of the Property sale by SJMD and (8) a document reflecting SJMD members' approval of Plaintiff pledging as security his economic interest in SJMD for a loan made by Defendant Malgesini through the incorporation by reference doctrine.  Additionally, Defendants

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
8

request judicial notice of the following court filings, (9) The Santa Clara County Superior Court May 16, 2016 complaint filed by BAPD against SJMD; (10) the May 16, 2016 *Lis Pendens* filed on the Property by BAPD; (11) The Santa Clara County Superior Court docket entries for the lawsuit filed by BAPD against SJMD; and (12) the September 13, 2019 Request for Dismissal filed by BAPD and SJMD. For the reasons discussed in the first dismissal Order, the Court takes judicial notice of RJN Exhibits 7-12.

Lastly, the Court declines to take judicial notice of RJN Exhibits 1-4 which relate to Plaintiff's real-estate license and personal bankruptcy. The Court does not find these materials necessary to consider for the Court's analysis.

### B. Motion to Dismiss Usury and RICO Claims

Defendants move to dismiss the complaint arguing that Plaintiff has still failed to plead a federal racketeering suit relating to the development and sale of the Property. Mot. at 1. Under 18 U.S.C. § 1962, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debts." 18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters and Joiners of Am. v. Building & Constr. Trades Dept., AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citation omitted).

Plaintiff asserts RICO claims under 18 U.S.C. § 1862 alleging defendants SJMD, Peruri, and Patel have violated California usury laws by attaching high interest rates to loans meant to cover calls for additional capital contributions and have thus engaged in the collection of unlawful debts. Additionally, Plaintiff "alleges predicate acts of attempted extortion and wire fraud" which all relate to the development and sale of the Property and also form the basis for Plaintiff's RICO claims. *See* FAC ¶¶ 129-50. The Court will address Plaintiff's claim of usury and related predicate acts separately.

#### 1. Plaintiff's Claim of Usury and the Collection of Unlawful Debt

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
9

In its October 2020 Order, the Court dismissed Plaintiff's usury claim after it determined that California usury laws did not apply because the development and sale of the Property was a "joint venture in real estate." Dismissal Order at 8-9. For the reasons discussed below, the Court still finds that Plaintiff and Defendants acted together in a joint venture.

Under California law, "[n]o person, association, copartnership or corporation shall by charging any fee bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action." Cal. Const. Article XV, § 1(2). The interest rate on the type of loans at issue may not exceed 10% per year. *Id*. "The essential elements of usury are: (1) [t]he transaction must be a loan or forbearance; (2) the interest paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994). "A transaction is rebuttably presumed not to be usurious," and "[t]he borrower bears the burden of proving the essential elements of a usurious transaction." *Id*. at 798-99.

There is a "reasonable line of demarcation between a legitimate business venture with the parties unequal in the extent of their risk but equally eager in their anticipation of profit, and a situation in which a necessitous borrower is victimized by a designing usurious lender." *Batchelor v. Mandigo*, 95 Cal. App. 2d 816, 823 (Ct. App. 1950). "The advancing of money as a hazardous investment in an enterprise must be distinguished from the advancing of money as a loan, and the former is outside the purview of the usury law." *Wooton v. Coerber*, 213 Cal. App. 2d 142, 148 (Ct. App. 1963). Thus, when the parties act together in a joint venture or partnership, the usury laws do not apply. *See Junkin v. Golden W. Foreclosure Serv.*, 180 Cal. App. 4th 1150, 1155 (2010). "Whether a transaction is a joint venture or a loan is a question of fact to be decided by the trier of fact." *Id*. at 1156. Although there is no precise formula for determining whether a particular transaction is a joint venture, there are three primary factors which distinguish a loan from a partnership or joint venture transaction: (1) whether there is an absolute obligation of repayment; (2) whether the investor may suffer a risk of loss; and (3) whether the investor has any

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
10

right to participate in management.  *See* 11 Miller and Starr Cal. Real Estate (4th ed. 2020) §37.13; *Junkin*, 180 Cal. App. 4th at 1155-56 (citing text).  The identity of the seller is also a factor.  "'If the venture between the parties involves the acquisition of property from a third party, the courts tend to conclude that the arrangement between the parties was a risk capital venture and not a loan.'"  *Junkin*, supra, 180 Cal. App. 4th at 1155–1156 (citation omitted).

As the Court noted in its first Dismissal Order, there is no provision in SJMD's Restated Operating Agreement, or the additional amendments that required a defaulting member to repay any money to a contributing member or SJMD when the company made calls for additional capital contributions.  Dismissal Order at 9.  Rather, in exchange for covering another member's default capital contributions, contributing members would receive a preferred rate of return on their additional contributions if the Property was sold.  Plaintiff argues that the Restated Operating Agreement, as amended by the Second Amendment created an obligation of repayment regardless if there was a successful sale of the Property.  Opp. at 20-21.  Specifically, the Second Amendment changed § 5.9 of the Restated Operating Agreement which dealt with distribution of company proceeds and originally referred to proceeds from the sale of the Property but now mentioned company proceeds in general.  For Plaintiff, this change meant that there was an obligation of repayment to a contributing member that was no longer contingent on the sale of property.  *See* SAC, Ex. 11 § 5.9.  However, § 5.9 contains no such language dealing with the repayment of loans or interest related to default capital contributions.  Plaintiff also relies again on the use of words such as "interest" and "line of credit" to argue that the calls for additional capital contributions were loan transactions and "absolutely repayable" as a practical matter.  *See* SAC ¶¶ 43, 69-72.  However, the language in the preferred return provisions did not require Plaintiff to repay any money used to cover the capital contributions he was responsible for, let alone mandate that default repayments be due by a certain date.  Therefore, there is little to suggest that the additional capital contribution calls and the preferred rates of return were parts of a loan transaction despite the casual reference to terminology associated with loans.  *See Boerner v. Colwell Co.*, 21 Cal. 3d 37, 48 (1978) (parties reference to a transaction involving credit

applications and various letters as "loans" did not make the transaction at issue a "loan").

Further, the Court finds that SJMD's members could have suffered a risk of loss related to the Property and Plaintiff had a right to participate in management decisions. Plaintiff does not outline any facts beyond the conclusory statement that it was unquestionable the Property would sell at a premium because of its location and approvals and construction permits were secured. *See* SAC ¶ 34. Aside from there being no guarantee that the Property would sell, each SJMD member held an Economic and Percentage Interest in the Property. Each member assumed a risk that they might suffer a loss if the venture were to fail. *Junkin*, 180 Cal. App. 4th at 1156. Moreover, by making additional capital contributions as well as covering defaulting members' capital contributions, a member's risk actually increased rather than decreased. If the property had taken longer to sell or not sold at all, if the sales price had been lower, or if associated costs had been higher, members stood to lose at least some of their capital investments. As to the right afforded to SJMD's members to participate in management, the Restated Operating Agreement made clear that certain decisions, including decisions about the sale of the property, design changes, approval of budgets, acquisition of assets, and dissolution of SJMD, were to be made by the majority of members. SAC, Ex. 9 at 8 (§§ 5.1, 5.3). Although SJMD and its members elected Mangers, all members had the right to participate in management decisions.

For these reasons, the Court holds that Plaintiff has not amended his complaint to show that the development and sale of the Property involved a loan transaction and was not simply a joint venture. Because the joint venture exception to the usury rules applies, Plaintiff is unable establish his RICO claims based on the alleged collection of unlawful debt.

### 2. Defendants' Additional Predicate Acts

As he did in his FAC, Plaintiff also alleges that Defendants engaged in a pattern of racketeering activity. A pattern of racketeering activity requires at least two predicate acts. 18 U.S.C. §§ 1961(5), 1962(c). While two predicate acts are necessary to state a claim, they may not be sufficient; a plaintiff must "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S.

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
12

1   229, 239 (1989) (emphasis in original).  Additionally, "in order to allege open-ended continuity, a
2   RICO plaintiff must charge a form of predicate misconduct that by its nature projects into the
3   future with a threat of repetition." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citations
4   omitted). "Conversely, an alleged series of related predicates not extending over a substantial
5   period of time and not threatening future criminal conduct fails to charge closed-ended
6   continuity." *Id*.

7   The Court previously established that Plaintiff failed to adequately allege that Defendants
8   committed the predicate act of wire fraud.  Dismissal Order at 10-11.  Because Plaintiff's RICO
9   claims were related to a single real estate transaction which focused on Plaintiff's allegations that
10  Defendants sought the collection of unlawful usurious interest, his failure to adequately allege
11  facts to support the predicate act of wire fraud precluded his RICO claims as a matter of law.  *Id*.

12  The SAC suffers from the same problems as the FAC—Plaintiff has failed to plead
13  Defendants committed wire fraud with the level of particularity required by Rule 9(b).  "Wire or
14  mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2)
15  use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and
16  (3) specific intent to deceive or defraud." *Sanford v. MemberWorks*, Inc., 625 F.3d 550, 557 (9th
17  Cir. 2010) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.
18  1986)).  Plaintiff claims that there is a scheme to defraud because "Defendant Peruri would
19  repeatedly and falsely state that he was a licensed real estate broker who could charge above the
20  legal rate of interest."  Opp. at 25-26.  Specifically, Plaintiff alleges Defendant Peruri sent an
21  email on December 6, 2019 to all SJMD members, in which he "falsely" stated he was a licensed
22  real estate broker.  SAC ¶ 46.

23  Plaintiff's SAC alleges the "who," "what," "when," and "where" of the purported fraud.
24  However, Plaintiff fails to plead with particularity the "how".  Plaintiff's SAC fails to offer any
25  facts explaining *how* Defendant Peruri would have caused the collection of unlawful interest in a
26  joint venture.  In sum, even after casting all reasonable inferences in favor of Plaintiff, the Court
27  finds Plaintiff has failed to plead wire fraud with particularity required by Rule 9(b).  Because

28  Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
13

1   Plaintiff is unable to establish the requisite number of predicate acts to demonstrate Defendants
2   engaged in a pattern of racketeering activity, Plaintiff's § 1962(c) RICO claim also fails.
3   Therefore, Plaintiff's claim under § 1962(d) must also fail. *See Turner*, 362 F.3d at 1231
4   ("Because appellants failed to allege the requisite substantive elements of a RICO claim under 18
5   U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d), which makes it 'unlawful for any
6   person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section,'
7   also fails").

Thus, the Court GRANTS Defendants' motion to dismiss Plaintiff's RICO claims without leave to amend.

### C. Remaining State Law Claims

Federal court jurisdiction is limited to claims raising federal questions or involving parties with diverse citizenship. *Exxon Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 552 (2005). In this case, Plaintiff predicates this Court's subject matter jurisdiction on his federal claims against Defendants. *See* 28 U.S.C. § 1331. The Court's jurisdiction over Plaintiff's state law claims is based on supplemental jurisdiction. 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Sanford*, 625 F.3d at 561. "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Sanford*, 625 F.3d at 561. Having now dismissed the federal claims alleged against Defendants without leave to amend and given the early stage of this litigation, the Court exercises its discretion and declines to assert supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, Plaintiff's remaining state law claims are DISMISSED without prejudice.

### IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's usury and federal RICO claims. The Court **DECLINES** to exercise supplemental jurisdiction

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
14

over the remaining state law claims and **DISMISSES** those claims without prejudice. As such, the Court **GRANTS** San Jose Midtown Development, LLC, Ashish Patel, and Thomas Malgesini's motion to dismiss. The Court also declines to afford Plaintiff another opportunity to amend his complaint as it holds doing so would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) ("It is not an abuse of discretion to deny leave to amend when any proposed amendment would be futile."). The Clerk shall close the file and a judgment in favor of Defendants shall follow.

**IT IS SO ORDERED.**

Dated: April 8, 2021

EDWARD J. DAVILA
United States District Judge

Case No.: 5:20-cv-01925-EJD
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
15